UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE LERNOUT & HAUSPIE SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | **Jury Trial Demanded**<br><br>Civil Action No. 00-CV-11589-PBS |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>                Plaintiffs,<br>v.<br>JO LERNOUT, *et al.*,<br>                Defendants. | **Jury Trial Demanded**<br><br>Civil Action No. 02-CV-10302-PBS |
| STONINGTON PARTNERS, INC., *et al.*,<br>                Plaintiffs,<br>v.<br>CARL DAMMEKENS, *et al.*,<br>                Defendants. | **Jury Trial Demanded**<br><br>Civil Action No. 02-CV-10303-PBS |
| PAUL G. BAMBERG, *et al.*,<br>                Plaintiffs,<br>v.<br>KPMG, LLP, *et al.*,<br>                Defendants.<br><br>JANET BAKER, *et al.*,<br>                Plaintiffs,<br>v.<br>KPMG, LLP, *et al.*,<br>                Defendants. | **Jury Trial Demanded**<br><br>Civil Action No. 02-CV-10304-PBS<br>CONSOLIDATED WITH<br>Civil Action No. 02-CV-10305-PBS |

**REPLY DECLARATION OF PROFESSOR MATTHIAS EDWARD STORME
IN SUPPORT OF PLAINTIFFS' JOINT MOTION TO COMPEL KPM G-BELGUIM**

PROFESSOR MATTHIAS E. STORME hereby declares pursuant to 28 U.S.C.

§ 1746 that:

1

1.     At the request of the Plaintiffs in the above-captioned actions, I have

reviewed the following papers submitted by defendant Klynveld Peat Marwick Goerdeler

Bedrijfsrevisoren ("KPMG-Belgium") in opposition to Plaintiffs' motion to compel

discovery: Declarations of Chris Engels, Jozef Lievens, and Professor Pierre van

Ommeslaghe, each executed on May 6, 2003, and KPMG-Belgium's Memorandum in

Opposition to Plaintiffs' Motion to Compel Discovery dated May 7, 2003. As explained

below, I disagree with several of the statements and opinions expressed by Mr. Engels

and Professor van Ommeslaghe.

## DECLARATION OF PROFESSOR PIERRE VAN OMMESLAGHE

### Disclosure of Information for Self-Defense

2.     I agree with Professor van Ommeslaghe's statements that an auditor can

disclose client secrets in order to defend itself in a civil or criminal case, and that this

exception to Article 458 of the Belgian Penal Code is a fundamental right guaranteed by

Article 6 of the European Convention on Human Rights and Article 14 of the

International Covenant on Civil and Political Rights. (See van Ommeslaghe Decl.

¶18(e).) However, I disagree with Professor van Ommeslaghe's statement that in such a

circumstance "the auditor can only disclose information or produce specific documents to

the extent strictly necessary for his defense." Professor van Ommeslaghe does not cite

any authority for this statement, and the authorities that he cites elsewhere in his

declaration do not support his narrow view of the auditor's right of self-defense.

3.      For example, in one of the articles that is cited at paragraph 17 of

Professor van Ommeslaghe's declaration, Raphael Prioux states (in English translation):

> When an auditor is himself called to testify as a defendant or when he is the subject of a civil liability action, it is generally considered that he is free to express himself in order to defend himself; he may, without violating professional confidentiality, cite all the evidence that he deems useful to his defense, even if his client requests that he maintain confidentiality. This theory – which appears to us to be persuasive – is specifically justified by the primacy of the principle of defense rights over professional confidentiality.
>
> However, an auditor who decides to remain silent cannot invoke professional confidentiality without limitations. In fact, according to the Court of Cassation, the possessor of confidential information named as a defendant in a court action cannot raise his professional confidentiality obligation as an objection for the sole purpose of shielding himself from the legal proceedings brought against him. The case law of the French Court of Cassation goes in the same direction.

R. Prioux, *Les exceptions au secret professionnel du Réviseur d'entreprises*, in Cahiers

AEDBF, *Le révision des comptes annuels et des comptes consolides*, Brussels, Bruylant,

2000, p.60, No. 17 (internal citations omitted from quoted text).[1] Among the authorities

cited by Mr. Prioux in the quoted text is a decision of the French Court of Cassation,

Commercial Division, November 14, 1995 in which KPMG, as a defendant to a civil

---

[1]      *See also,* the two other articles cited at paragraph 17 of Professor van Ommeslaghe's declaration: G. Stessens, *Het beroepsgeheim vs. (economisch-financieel) strafrecht* in Jaarboek CBR 1996-97, Antwerp, Maklu, 1997, p.424 no. 79 (states that it is generally accepted that the professional may make information public in order to defend itself in judicial proceedings, and cites Court of Cassation decision of February 5, 1985 to which I referred at paragraph 15 of my declaration of April 16, 2003), and P. Lambert *Le Secret professionnel*, pub. Nemesis, 1985, p.112-13 (states that the most authoritative Belgian authors and Belgian case law accept that the right to defend oneself, even in civil cases, is a superior and overriding interest).

liability claim, was ordered to produce documents over its objection that the documents

were protected from disclosure by the auditor's duty of professional secrecy. R. Prioux,

*supra* p.60, No. 17, footnote 36.[2]

4.     At paragraph 12 of his declaration, Professor van Ommeslaghe states that

the Act of July 22, 1953 on the establishment of an Institute of Auditors (the "Institute of

Auditors Act") empowers the Belgian Institute of Company Auditors to sanction auditors

who breach their professional duties, including by suspending or removing them from the

auditing profession. The disciplinary decisions of the Institute are published in its

Annual Reports. I have reviewed the Institute's Annual Reports for the period from 1980

to the present, and have not found any reported decision in which the Institute disciplined

an auditor who was a defendant in a legal proceeding for violating the duty of secrecy.

5.     It should be noted that Belgian lawyers also are subject to the Article 458

duty of secrecy. As reported in a June 29, 2001 article from *De Standaard Online*, a copy

and English translation of which are attached hereto as EXHIBIT 1, the law firm that

represented Lernout & Hauspie (Allen & Overy Belgium, formerly Loeff Claeys

Verbeke) has stated publicly that if it is placed under suspicion in the judicial

investigation into Lernout & Hauspie (as KPMG-Belgium has been (see Lievens Decl.

---

[2]     According to Mr. Prioux, even where the auditor is called as a witness in a civil case and is not himself a defendant: "one cannot rule out the fact that, by application of Article 877 of the Judicial Code, or pursuant to a summary action, the auditor may be ordered to produce documents in court notwithstanding his refusal to do so." R. Prioux, *supra* p.59, No. 16 (quoting Court of Cassation decision of November 29, 1991, Pas., I, p.162 in which a medical doctor who invoked professional secrecy was ordered to produce a medical file lest "'professional confidentiality ... subvert and deviate from the social necessity that justifies same'").

¶5)) it will be able to defend itself "because our attorney-client privilege would no longer apply." (Emphasis added to original.)

### Disclosure of Information With Client's Consent

6.      Professor van Ommeslaghe's declaration refers to Section 27(2) of the Institute of Auditors Act, which permits the auditor to confirm information already in the possession of a third party with the client's consent. (See van Ommeslaghe Decl. ¶18(c).) However, the client's ability to discharge the auditor from the professional secrecy obligation is not limited to this situation. The authorities that Professor van Ommeslaghe cites in his declaration recognize that the client can waive the auditor's duty of secrecy. G. Stessens, *supra* p.403 (cites an article by Professor Luc Huybrechts (now a Judge of the Supreme Court) who states that it is evident that the auditor may speak when it has the consent of its client, and notes that the earlier position taken by the Belgian Institute of Company Auditors was more restrictive); R. Prioux, *supra* p.59 No. 16 (states that according to the Belgian Institute of Company Auditors an auditor who is a witness in a judicial proceeding can make secret information public with the consent of its client, and cites Annual Report 1980 of the Belgian Institute of Company Auditors p.42).

7.      At the request of Plaintiffs, I have contacted Mr. Seys, a trustee of the L&H bankruptcy, and requested that the L&H Trustees consent to KPMG-Belgium disclosing of information in response to Plaintiffs' discovery requests. In response, Mr. Seys requested that I provide him with information concerning the Plaintiffs' lawsuits. I forwarded to Mr. Seys copies of some of the pleadings and several of

Judge Saris' decisions in this litigation. My most recent letter to Mr. Seys was dated April 4, 2003. I am waiting for his response.

## Authority of Belgian Institute of Company Auditors to Make Law

8.      In his declaration, Professor van Ommeslaghe correctly states that the Institute of Auditors Act empowers the Belgian Institute of Company Auditors "to propose regulations which may be ratified by Royal Decree in order to become binding" under Belgian law. (van Ommeslaghe Decl. ¶10.) This was done by the Royal Decree of January 10, 1994, Article 2 of which provides that the auditor must follow the "usual control norms" established by the Institute. In my opinion, the Institute's interpretations of Article 458 of the Penal Code, including those set forth in the letter of March 10, 2003 attached to Mr. Lievens' Declaration, are not "usual control norms" established by the Institute and do not have the force of law.

## No Duty of Secrecy After L&H Has Been Dissolved

9.      Professor van Ommeslaghe states that he does not understand or agree with my opinion that upon the dissolution of Lernout & Hauspie, at the conclusion of the currently-pending bankruptcy proceeding, KPMG-Belgium will no longer be subject to the obligation of professional secrecy. (van Ommeslaghe Decl. ¶21.) Professor van Ommeslaghe is correct that no Belgian statute so provides. I am not aware that this issue has ever been considered by a Belgian court. My opinion is based on the fact that the sole purpose of Article 458 is to protect the interests of the client, not to shield the professional from liability. If the client ceases to exist and leaves no successors, there is no longer a client interest to be served by the auditor maintaining information in secret.

6

## DECLARATION OF CHRIS ENGELS

10.    In his declaration, Mr. Engels expresses the opinion that it would be
inconsistent with Belgian Law of December 8, 1992 on the protection of privacy in
relation to the processing of personal data (the "Data Protection Act") for KPMG-
Belgium to disclose certain information in response to Plaintiffs' discovery requests.
Mr. Engels specifically opines that the following information constitutes "personal data"
of KPMG-Belgium's employees that the Data Protection Act prohibits KPMG-Belgium
from disclosing:

- diaries of partners, principals, employees and agents of KPMG
  relating to meetings, contacts, and conversations in connection
  with any [L&H-related] Engagement;

- desk and office files of all KPMG employees who participated
  in any [L&H-related] Engagement;

- personnel files for all persons who participated in any [L&H-
  related] Engagement; and

- documents related to the compensation of all persons who
  participated in any [L&H-related] Engagement.

(Engels Decl. at ¶¶3, 5, 7.)  Mr. Engels further opines that the discovery obligations to
which KPMG-Belgium is subject in the United States as a party-defendant to these
actions would not exempt KPMG-Belgium from compliance with the Data Processing
Act.  I disagree with Mr. Engels' conclusions, for the reasons stated below.

11.    The Data Processing Act implements the 1981 Council of Europe
Convention for the Protection of Individuals with Regard to Automatic Processing of
Personal Data and Directives 95/46/EC and 97/66/EC of the European Parliament and the
Council of the European Union, which seek to protect fundamental individual rights (for
example privacy, non-discrimination, and fair trial) while at the same time facilitating the

7

free flow of information across borders. (See, e.g. Preamble, 1981 Convention and Explanatory Report at ¶25.) The Data Processing Act regulates the wholly or partially automated processing (that is, processing carried out by automated means) of personal data, and the non-automated processing of personal data that is contained in a "filing system" ("bestand" or "fichier"), defined as "a structured whole of data relating to persons which is accessible according to specific criteria." (Article 3, Data Processing Act.) The disclosure of information in pretrial discovery does not involve automated processing of information; and there is no indication that the diaries, desk and office files, personnel files, and documents relating to compensation that Plaintiffs are seeking from KPMG-Belgium are contained within a "filing system" as defined by the Act. Thus, it is not certain that the Data Processing Act even applies to this situation.

12.     Even if pretrial discovery of these documents constitutes "data processing" that is subject to the Data Processing Act, the Act only regulates the processing of "personal data." For purposes of the Data Processing Act, "personal data" means information concerning a natural person, by which the person or his/her characteristics can be characterized or classified. (Article 1, §1 ("données à caractère personnel").) "Personal data" includes such information as an individual's address, telephone number, car registration number, and image (that is, photograph). Mr. Engels' declaration does not establish that all of the documents Plaintiffs seek from KPMG-Belgium (including desk and office files) reflect "personal data." Even if they do, however, it is my opinion that KPMG-Belgium would be permitted to disclose that data under Article 5(c) of the Data Protection Act, and possibly also under Article 5(f).

8

13.    Article 5(c) of the Act authorizes the processing of personal data if such processing is necessary for compliance with an obligation to which the controller of the data [in this case, KPMG-Belgium] is subject by virtue of law [in this case, the legal obligation of a party to litigation in the United States to provide requested discovery]. (See Engels Decl. ¶7.1(c).) Mr. Engels concedes that his contrary opinion, to the effect that "law" for purposes of Article 5(c) "refers to a Belgian legal provision and not to provisions of foreign law," is not supported by any authority. (Engels Decl. Note 2.) In my opinion, any legal rule, whether Belgian or foreign, that can be determined with sufficient clarity and that is not contrary to Belgian International Public Order would constitute "law" for purposes of Article 5(c). According to Belgian conflict of law rules, the lex fori – in this case, United States' law – governs procedural matters such as discovery in these actions, and United States' discovery rules are not generally contrary to Belgian International Public Order. In my opinion, Article 5(c) of the Data Processing Act authorizes KPMG-Belgium to disclose "personal data" in order to comply with its discovery obligations under U.S. law. Any uncertainty on this point could be eliminated if the United States District Court were to order KPMG-Belgium to produce these documents, because such an order would confirm and clarify the extent of KPMG-Belgium's legal obligations.

14.    Article 5(f) of the Data Protection Act authorizes the processing of personal data if the legitimate interests of a third party outweigh the interests of the person who is the subject of the data. (See Engels Decl. ¶7.1(f).) On this point as well, Mr. Engels concedes that there is no case law to support his opinion "that a Belgian court or the Belgian Privacy Commission would decide in the particular case at hand that the

right to privacy of the KPMG-B employees prevails over the interests of the plaintiffs with respect to the information requested and discussed in this opinion." (Engels Decl. Note 4.) Assuming that the documents the Plaintiffs have requested from KPMG-Belgium contain "personal data" that the Data Protection Act protects from disclosure, whether the KPMG-Belgium employee's privacy interest would prevail over the Plaintiffs' interest would depend upon the nature of the information at issue, and the importance of that particular information to the Plaintiffs' ability to prosecute these actions. Because KPMG-Belgium has not identified any particular protected information that is contained in the requested documents, there is no basis for Mr. Engels' opinion that the interests of the KPMG-Belgium employee would necessarily prevail.

15. The Data Processing Act affords a higher level of protection to "sensitive personal data," which reveals information about a person's racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, sex life, or health status. (Article 6.) Even if the documents that Plaintiffs seek from KPMG-Belgium contain "sensitive personal data" (which KPMG-Belgium has not claimed to be the case), Article 6, §2(f) of the Act would permit KPMG-Belgium to disclose such data to the extent "necessary for defense of subjective rights in Court."

## STORME DECLARATION OF MAY 6, 2002

16. Last year I provided assistance to some of the Plaintiffs in responding to KPMG-Belgium's arguments that Belgium was a more appropriate forum for adjudicating the Plaintiffs' claims than is the United States. In that context, I provided testimony concerning Belgian procedural and substantive law, including in a declaration

made on May 6, 2002 that was submitted in *Stonington Partners, Inc., et al. v. Dammekens, et al.*, Civil Action No. 02-CV-10303 (PBS).  A copy of my May 6, 2002 declaration is annexed hereto as EXHIBIT 2.

17.     In its Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery, KPMG-Belgium argues that statements I made concerning the Belgian litigation process and Belgian civil procedure are inconsistent with the views expressed in my declaration of April 16, 2003 concerning the scope of, and exceptions to, Article 458 of the Belgian Penal Code.  I concede that in my May 6, 2002 declaration, I did not fully describe the various exceptions to the duty of professional secrecy pursuant to which an auditor may be required to disclose confidential information.  The statement at paragraph 27 of my May 6, 2002 declaration to the effect that an auditor cannot be compelled to disclose documents in defense of a lawsuit, was based on opinions expressed in 1986 and 1991 by KPMG-Belgium's attorney, Mr. Lievens.  (Cited in footnote 7 of my May 6, 2002 declaration.)  Upon further examination of this issue, and in light of recent Court decisions (including those cited by R. Prioux, *supra* pp.59-60, Nos. 16-17), it is my view that a Belgian Court could compel an auditor that is a defendant in a civil law suit to produce documents that are subject to the duty of professional secrecy.

I declare under penalty of perjury, under the laws of Belgium and the laws of the

United States of America that the foregoing is true and correct and that it was duly

executed at Brussels, Belgium on May 20th, 2003.

Matthias E. Storme